## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-02244-CMA-GPG

GARY HECHT,

Plaintiff,

v.

ALLSTATE INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY;
ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

Defendants.

---

## SCHEDULING ORDER

---

### 1.   DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

The scheduling conference was conducted on October 24, 2012, at 10:30 a.m.  The

following attorneys were present as counsel of record:

For plaintiff Gary Hecht:

Nicholas W. Mayle, Esq.
KILLIAN DAVIS Richter & Mayle, PC
202 North Seventh Street
P.O. Box 4859
Grand Junction, CO 81502
(970) 241-0707

For defendants Allstate Insurance Company; Allstate Fire and Casualty Insurance Company; and Allstate Property and Casualty Insurance Company (collectively referred to hereinafter as "Allstate")  (via telephone):

Rebecca K. Wagner, Esq.
Robyn B. Averbach, Esq.
Campbell Latiolais & Averbach, P.C.
825 Logan Street
Denver, Colorado 80203
(303) 861-7760

## 2.   STATEMENT OF JURISDICTION

Plaintiff brought this action in the Mesa County District Court.  Defendant, Allstate, removed the action pursuant to 28 USC §1332(a) in that this is a civil action between citizens of different states and plaintiff alleges that the amount in controversy exceeds $75,000, exclusive of interests and costs.

## 3.   STATEMENT OF CLAIMS AND DEFENSES

a.     Plaintiff:

On July 3, 2008, Gary Hecht was injured when the motorcycle he was traveling on was rear-ended by a vehicle driven by Kenneth Clay.  Clay's negligence and negligence per se caused the collision.  Hecht sustained serious physical injuries in the collision and incurred substantial medical bills, lost income, impairment of his ability to earn future income, permanent impairment, scarring, and noneconomic damages for pain and suffering, emotional stress, inconvenience, and impairment of the quality of life.

Clay had automobile liability insurance of $50,000.00 with Allstate.  Hecht filed suit against Clay and obtained a policy limits settlement.  Hecht has two policies of Underinsured Motorist ("UIM") insurance with Allstate.  Each policy provides UIM coverage of $250,000.00

2

per person and $500,000.00 per occurrence.  Subsequent to settling his claim with Clay, Hecht

attempted to resolve his UIM claims with Allstate.  He was unable to resolve these claims and

filed suit against the defendants in the Mesa County District Court.  Hecht brought claims against

Allstate for:

1.      Breach of Contract for UIM Benefits.

2.      Declaratory Judgment for UIM benefits pursuant to C.R.C.P. 57 and sections 13-51-
        101, C.R.S.

3.      Bad Faith Breach of Insurance Contract for Denial of Sufficient UIM Benefits

4.      Unreasonable Denial of Claim for Sufficient UIM Benefits Pursuant to sections 10-3-
        1115 and 10-3-1116, C.R.S.

   b.    Defendant:

The defendants assert that the plaintiff's Complaint fails to state a claim upon which

relief can be granted and that the plaintiff's injuries and damages, if any, may have been pre-

existing, and the defendants are not liable, if at all, for any pre-existing injuries and damages.

Additionally, defendants claim that the plaintiff's injuries and damages, if any, may have

occurred as a result of non-related subsequent events, and the defendants are not liable, if at all,

for any such subsequent injuries and damages.

Defendants assert that the plaintiff may have failed to mitigate his damages, if any, by

taking such reasonable steps under the circumstances as would reduce his injuries and damages,

if any; and any damages resulting from the plaintiff's failure to take such reasonable steps cannot

be recovered.

Defendants further assert that the plaintiff's non-economic damages, if any, are limited

3

by C.R.S. § 13-21-102.5, and that the plaintiff's damages, if any, are reduced by the amount of any payment received from any collateral source, within the scope of C.R.S. § 13-21-111.6. Likewise, defendants claim that the plaintiff's damages, if any, are reduced by the receipt of med-pay benefits.

Defendants claim that the plaintiff may not be the real party in interest with regard to his claimed damages and that these defendants are entitled to the setoff of any amounts paid to the plaintiff.

Defendants also assert that the plaintiff's damages, if any, are limited to the amount of underinsured motorist benefits policy limits available to the plaintiff in this case and that the plaintiff's recovery of any benefits under the Allstate insurance policies at issue are subject to and limited by all of the terms, conditions, limitations and exclusions of said policies, including but not limited to, applicable policy limits and/or limits of liability, setoffs and primacy conditions.

Defendants assert that the plaintiff's claims for payment of insurance benefits under the Allstate insurance policies may be barred by conditions precedent, including failure to comply with the policy's cooperation clause and/or failure to fulfill his duties in the event of loss as specified in the policy or policies.

Finally, defendants assert that "Allstate Insurance Company" is not a proper defendant in this case as "Allstate Insurance Company" did not issue any policies of insurance to the plaintiff. According to the plaintiff's motorcycle policy, Policy No. 920675603 11/12, was issued through Allstate Property and Casualty Insurance Company. Moreover, plaintiff's automobile policy, Policy No. 920681068, was issued through Allstate Fire and Casualty.

4

#### 4.   UNDISPUTED FACTS

The following facts are undisputed:

1.      Allstate Fire and Casualty Insurance Company is a foreign corporation registered in the state of Illinois. (Complaint ¶ 5, Answer ¶ 3).

2.      Allstate Fire and Casualty Insurance Company is authorized to do business in Colorado and does business in Mesa County, Colorado. (Complaint ¶ 6, Answer ¶ 3).

3.      Allstate Property and Casualty Insurance Company is a foreign corporation registered in the state of Illinois. (Complaint ¶ 7, Answer ¶ 3).

4.      Allstate Property and Casualty Insurance Company is authorized to do business in Colorado and does business in Mesa County, Colorado. (Complaint ¶ 8, Answer ¶ 3).

5.      Allstate issued motorcycle insurance policy number 9 20 675603 11/12 to Gary Hecht. (Complaint ¶ 10, Answer ¶ 3).

6.      The Allstate motorcycle policy was valid and in effect on July 3, 2008. (Complaint ¶ 12, Answer ¶ 3).

7.      The Allstate motorcycle policy provided underinsured motorist ("UIM") coverage on a 2000 Honda Shadow motorcycle and a 1981 Honda Motorcycle. (Complaint ¶ 13, Answer ¶ 3).

8.      On July 3, 2008, Gary Hecht was the owner of the 2000 Honda Shadow motorcycle and a rated driver under the Allstate policy. (Complaint ¶ 14, Answer ¶ 3).

9.      On July 3, 2008, Gary Hecht was the driver of the 2000 Honda Shadow motorcycle. (Complaint ¶ 15, Answer ¶ 3).

10.     The Allstate motorcycle policy provided UIM coverage of $250,000.00 per person and $500,000.00 per occurrence. (Complaint ¶ 16, Answer ¶ 3).

11.     Allstate also issued automobile insurance policy number 9 20 681068 11/28 to Gary Hecht. (Complaint ¶ 17, Answer ¶ 3).

12.     The Allstate automobile policy was valid and in effect on July 3, 2008. (Complaint ¶ 19, Answer ¶ 3).

13.     The Allstate policy provided underinsured motorist ("UIM") coverage on a 2002 GMC Yukon, 1975 Chevy Truck, and 2001 Chevy Tahoe. (Complaint ¶ 20, Answer ¶ 3).

14.     The Allstate automobile policy provided UIM coverage of $250,000.00 per person and $500,000.00 per occurrence. (Complaint ¶ 21, Answer ¶ 3).

15.     On July 3, 2008, in Mesa County, Colorado, Hecht was the operator of 2000 Honda Shadow motorcycle ("Honda") with Colorado license plate number 907OOT. (Complaint ¶ 26, Answer ¶ 3).

16.     Hecht was driving westbound on U.S. Highway 6&50 in Mesa County, Colorado. (Complaint ¶ 27, Answer ¶ 3).

17.     On July 3, 2008, in Mesa County, Colorado, Kenneth Clay was the operator of a 2005 Toyota Prius ("Prius") with Nevada license plate number 974SZE. (Complaint ¶ 29, Answer ¶ 3).

18.     Clay was also westbound on Highway 6 & 50, driving behind Hecht. (Complaint ¶ 30, Answer ¶ 3).

19.     At the time of the collision, it was daylight. (Complaint ¶ 33, Answer ¶ 3).

20.     At the time of the collision, Clay had automobile liability insurance also with Allstate, (the "Clay policy"). (Complaint ¶ 43, Answer ¶ 3).

21.     The Clay policy provided liability coverage of $50,000.00 per person. (Complaint ¶ 44, Answer ¶ 3).

22.     In a letter dated June 23, 2011, Allstate provided written authorization to Gary Hecht to settle with Clay for policy limits of $50,000.00. (Complaint ¶ 46, Answer ¶ 3).

23.     Gary Hecht accepted Clay's liability policy limits offer of $50,000.00. (Complaint ¶ 47, Answer ¶ 3).

24.     Gary Hecht made a claim for UIM benefits against the Allstate policies. (Complaint ¶ 50, Answer ¶ 3).

25.     Allstate has not paid Gary Hecht any UIM benefits to cover his injuries, damages, and losses from the July 3, 2008, collision. (Complaint ¶ 53, Answer ¶ 3).

26.     Allstate has not paid Gary Hecht any UIM benefits under the Allstate policies. (Complaint ¶ 54, Answer ¶ 3).

27.     An insurance company has a duty to act in the interests of its insured. (Complaint ¶ 55, Answer ¶ 3).

28.     On July 3, 2008, Clay had $50,000.00 in automobile liability insurance coverage under the Clay policy. (Complaint ¶ 58, Answer ¶ 3).

29.     The Allstate policies are contracts. (Complaint ¶ 64, Answer ¶ 3).

30.     The UIM coverage provided in the Allstate policies may be "stacked" on the automobile liability coverage of the Clay policy. (Complaint ¶ 66, Answer ¶ 3).

31.     Gary Hecht has made a demand for UIM benefits under the Allstate policies. (Complaint ¶ 67, Answer ¶ 3).

32.     Allstate has not paid Gary Hecht any UIM benefits under the Allstate policies. (Complaint ¶ 71, Answer ¶ 3).

33.     On July 3, 2008, Gary Hecht was an insured under the terms and conditions of the Allstate policies. (Complaint ¶ 76, Answer ¶ 3).

34.     Allstate has not paid Gary Hecht any UIM benefits under the Allstate policies. (Complaint ¶ 79, Answer ¶ 3).

35.     There is a current and justiciable dispute that this court can resolve. (Complaint ¶ 81, Answer ¶ 3).

36.     Allstate is engaged in the business of insurance. (Complaint ¶ 93, Answer ¶ 3).

37.     Gary Hecht is seeking an order declaring that he is entitled to UIM benefits under the Allstate policies. (Complaint ¶ 82, Answer ¶ 5).

## 5.   COMPUTATION OF DAMAGES

a.     Plaintiff:

Plaintiff's Computation of Damages is as follows:

As a result of the collision, Mr. Hecht has sustained damages consisting of (1) economic losses, (2) noneconomic losses, and (3) permanent impairment. These damages are addressed below.

### A.     Economic Damages

Mr. Hecht's economic damages consist of (1) past medical expenses, (2) future medical expenses, and (3) past and future diminished earning capacity and shortened work life.  These

7

areas of loss are discussed in turn below.

### 1.    Past Medical Expenses and Mileage

Mr. Hecht has incurred $45,265.74 in past medical expenses and $548.62 in mileage in traveling to and from his medical appointments. Mr. Hecht's treatment is ongoing. Mr. Hecht is entitled to compensation for the amount of his medical expenses and mileage. Mr. Hecht's medical expenses and mileage are as follows:

### SUMMARY OF TREATMENT

| PROVIDER | PERIOD OF TREATMENT | COST |
|---|---|---|
| St. Mary's Hospital | July 8, 2008 | $1,148.00 |
| Western Colorado Radiologic Associates, PC | July 8, 2008, May 28, 2008, April 9, 2010 | $861.00 |
| Community Hospital- Therapy Works | September 30, 2008- November 24, 2008 | $1,087.00 |
| Brady Chiropractic Group, PC | March 11, 2009- March 18, 2009 | $220.00 |
| Rocky Mountain Orthopaedic Associates | May 27, 2009- June 28, 2011 | $12,009.00 |
| St. Mary's Hospital | April 9, 2010 | $4,332.74 |
| Anesthesia Consultant of Western Colorado | June 10, 2010 | $2,100.00 |
| Grand Valley Surgical Center | June 10, 2010, June 28, 2011 | $20,206.00 |
| Primary Care Partners | July 10, 2008, August 15, 2008, May 8, 2009 | $279.00 |
| Steadman Clinic | September 1, 2011 | $628.00 |
| Advanced Therapeutics of the Western Slope | September 12, 2011 - December 19, 2011 | $2395.00 |
| | **TOTAL:** | **$45,265.74** |

### SUMMARY OF MILEAGE

| Treater | Treatment Date Range | Number of Visits | Total Mileage Travelled | Reimbursement Total at $.50 Per Mile |
|---|---|---|---|---|

8

| St. Mary's Hospital | 7/8/2008-4/9/2010 | 2 | 27.24 | $13.62 |
|---|---|---|---|---|
| Primary Care Partners | 7/10/2008-5/8/2009 | 3 | 50.4 | $25.20 |
| Community Hospital – Therapy Works | 9/30/2008-11/24/2008 | 6 | 53.16 | $26.58 |
| Brady Chiropractic | 3/11/2009-3/18/2009 | 4 | 28.88 | $14.44 |
| Rocky Mountain Orthopaedic Associates | 5/27/2009-6/28/2011 | 19 | 216.60 | $108.30 |
| Grand Valley Surgical Center | 6/10/2010-6/28/2011 | 2 | 18.60 | $9.30 |
| Steadman Hawkins Clinic | 9/1/2011-1/9/2012 | 2 | 572.76 | $286.38 |
| Advanced Therapeutics | 9/12/2011-12/19/2011 | 15 | 129.60 | $64.80 |
| **Total** | | | | **$548.62** |

## 2.    Future Medical Expenses

Mr. Hecht's treatment is ongoing and he will incur future medical expenses. Mr. Hecht will likely need future medical treatment, surgery, physical therapy, and injections. Mr. Hecht will require future medical treatment to hopefully reduce the constant pain he still experiences in his shoulder. Even after two surgeries, his pain has not subsided. He received an injection in September of 2011, in the hope of receiving additional pain relief. He will require a third surgery on his shoulder. Dr. Heil has opined that in order for Mr. Hecht to gain further ROM and relieve his pain, a third surgery to remove a bone spur and scar tissue is necessary. The estimated cost of this surgery is $20,000.

With the continued symptoms that he has experienced, Mr. Hecht will need to follow up with the Steadman Hawkins Clinic in Vail at least once a year. The average cost for their visit is $419.00. According to section 13-25-103 C.R.S., Mr. Hecht's remaining life expectancy is 43.5

9

years.  His estimated future medical expenses for follow up with the Steadman Hawkins Clinic is $18,226.50 ($419.00 for 43.5 years)

Mr. Hecht will also have to seek physical therapy when he experiences exacerbation of his injury. The average cost for a session of physical therapy is $187.00. He will likely need to seek physical therapy 4–5 sessions per year. Mr. Hecht's estimated physical therapy medical expenses are $40,675.50 (5 session of physical therapy per year at $187.00 per session for 43.5 years).

Mr. Hecht's estimated future medical expenses are $78,902. However, Mr. Hecht will rely on his medical doctors and experts for the cost, nature, and duration, of his future medical expenses.

### 3.    Lost Income

At the time of the incident, in addition to owning and operating his own Allstate agency, Mr. Hecht also worked as a mechanic for Transwest Trucks.  In the two years prior to the collision, he earned substantial income working as a mechanic.  In 2006, his annual income was $82,158.23 and in 2007, it was $83,872.00, which is approximately a 2% increase over the previous year.  His average earnings over these two years were $83,015.12, or $39.91 per hour (working 2080 hours per year). Mr. Hecht has lost income in each of the years since the collision.

**2008**

Immediately after the collision Mr. Hecht missed approximately two weeks from work at Transwest Trucks.  Even though he was severely injured and was in a lot of pain, he needed to return to work to provide for his family.  Mr. Hecht's lost wages for the two weeks following the

collision are $3,192.80. (40 hours per week x 2 weeks x $39.91 per hour).

Mr. Hecht also sustained diminished earning capacity as a result of his injuries. In 2006, 2007 and prior to the collision in 2008, Mr. Hecht was employed by Transwest Trucks where he worked as a mechanic. In 2006, his annual income was $82,158.23 and in 2007, it was $83,872.00, which is approximately a 2% increase over the previous year. In 2008, at the time of the collision, Mr. Hecht was employed by Transwest Trucking. However, due to the injuries he sustained in the collision, he could no longer perform the necessary duties of his job. Mr. Hecht left Transwest Trucking in September 2008, and sought employment with Stewart and Stevenson which provided a less physically demanding environment for him. Due to Mr. Hecht's injuries, he has difficulties lifting anything above his head.

In 2008, Mr. Hecht's annual income was $35,552 ($20,324.89 income from Transwest Trucking + $1,029.38 from Express Service +$14,197.77 from Stewart and Stevenson). Had he not been injured in the collision, Mr. Hecht would have been able to remain at Transwest Trucking, where his 2008 projected income was $85,549.44 (2007 income of $83,872 x 1.02 (estimated 2% annual increase) = $85,549.44). Mr. Hecht's income in 2008 was $35,552. His diminished work capacity for 2008 was $49,997.44 (projected 2008 income of $85,549.44 less $35,552 = $49,997.44).

Mr. Hecht's lost income and reduced earning capacity in 2008 was $53,190.24 ($3,192.80 actual lost time from work + 49,997.44 diminished earning capacity for the year).

### 2009

In 2009, Mr. Hecht worked for Stewart and Stevenson and his annual income was $52,543.99. Had Mr. Hecht been able to stay with Transwest Trucking, his projected income

11

would have been $87,260.43 ($85,549.44 projected 2008 income x 1.02 (estimated 2% annual increase).

Mr. Hecht's diminished earning capacity for 2009 is $34,716.44 ($87,260.43 projected income less $52,543.99 actual income).

### 2010

Mr. Hecht underwent his first shoulder surgery on June 11, 2010.  During this time, Mr. Hecht was employed with Stewart and Stevenson making $28.77 per hour.  Mr. Hecht missed approximately 3 months or 13 weeks of work to recover from his surgery.  Mr. Hecht's lost income during this time was $14,960.40 ($28.77 per hour x 40 hours per week x 13 weeks).  Mr. Hecht received short-term disability payments from his employer as a result of this missed work. However, under Colorado law, Allstate is not permitted to reduce the amount of damages it owes by any other insurance (such as short-term disability) for which Mr. Hecht had the foresight to contract.

In 2010, Mr. Hecht's annual income from Stewart and Stevenson was $52,497.15. (This includes his short-term disability payments of approximately $14,960.40 (100% of wage loss)). When one subtracts $14,960.40 from $52,497.15, his actual earnings at Stewart & Stevenson were $37,536.75. Had Mr. Hecht been able to stay with Transwest Trucking, his projected income would have been $89,005.64 ($87,260.43 projected 2009 income x 1.02 (estimated 2% annual increase). Mr. Hecht's diminished earning capacity for 2010 is $51,468.89 ($89,005.61 - $37,536.75= $51,468.89).

Mr. Hecht's lost income and diminished earning capacity for 2010 was $51,468.85.

### 2011

Mr. Hecht underwent his second shoulder surgery in June 2011. During this time, Mr. Hecht was still employed with Stewart and Stevenson making $28.77 per hour. Mr. Hecht missed approximately 2 months or 9 weeks of work to recover from this second surgery. Mr. Hecht's lost income during his recovery was $10,357.20 ($28.77 per hour x 40 hours per week x 9 weeks). Mr. Hecht received short-term disability payments from his employer for this missed work. However, under Colorado law, Allstate is not permitted to reduce the amount of damages it owes by any other insurance (such as short-term disability) for which Mr. Hecht had the foresight to contract.

In 2011, Mr. Hecht went from being an hourly employee with Stewart and Stevenson to a salary employee. During 2011, Mr. Hecht made $74,035.49. This includes his short term disability payments of approximately $10,357.20 (100% of wage loss). When one subtracts $10,357.20 from $74,035.49, his actual earnings at Steward and Stevenson were $63,678.29. Had Mr. Hecht been able to continue with Transwest Trucking, his projected income for 2011, would have been $90,785.75 ($89,005.64 projected income for 2010 x 1.02 (estimated 2% annual increase). Mr. Hecht's diminished earning capacity for 2011 is $27,104.46.

Mr. Hecht's lost income and diminished earning capacity for 2011 was $27,104.46.

### Total Past Lost Income

Mr. Hecht's total past lost income is $164,181.43 ($3,192.80 lost income in 2008 + $49,997.44 diminished earning capacity in 2008 + $34,716.44 diminished earning capacity in 2009+ $13,809.60 lost income in 2010 + $36,508.49 diminished earning capacity in 2010 + $9,206.40 lost income in 2011 + $16,750.26 diminished earning capacity in 2011= $164,181.43).

### 4.  Diminished Earning Capacity and Shortened Work Life

It is likely that Mr. Hecht will lose income in the future due to diminished earning

capacity and shortened work life.  He continues to suffer from the injuries sustained in the July 3,

2008, collision.  He continues to experience constant pain in his shoulder.  He continues to seek

treatment and still has pain despite undergoing two surgeries.  As set forth above, Mr. Hecht

currently has diminished earning capacity of $16,750.26 per year due to the injuries he sustained

in the collision ($90,785.75 projected income for 2011 minus $74,035.49 actual income for

2011).  He will likely experience this diminished earning capacity for the remainder of his work

life of 32 years.

Mr. Hecht is currently 35 and planned to retire at 67 or beyond.  As demonstrated by his

past work history, Mr. Hecht is a hard worker and has continuously sought to maximize his

earning potential.  Assuming that Mr. Hecht attempts to mitigate his income loss by continuing

to be employed and seeking employment, which he is best able to perform with his injuries, Mr.

Hecht could reasonably expect to sustain $16,750.26 in diminished earning capacity damages for

the next ten years.  This is a total of $167,502.6 in diminished earning capacity.  If this matter

proceeds to trial, Mr. Hecht will retain a vocational expert and economist to more precisely

calculate his future lost income.

### B.      Non-Economic Damages

Mr. Hecht continues to suffer from injuries sustained in the collision. He has persistent

pain in his neck, upper back and right shoulder. The pain in his right shoulder has continued even

after having two surgeries to repair the SLAP tear. Additional surgery is needed.

Mr. Hecht's life expectancy at the time of the incident, under section 13-25-103, C.R.S.,

was 46.3 years.  As a result of the incident, Mr. Hecht has endured (1) pain and suffering; (2) emotional stress; (3) inconvenience; and (4) impairment of the quality of life.  Valued at $3,000.00 per year, Mr. Hecht has a total of $138,900.00 in non-economic damages.

### C.    Permanent Impairment

As a result of the injuries Mr. Hecht sustained, he has permanent physical impairment. Mr. Hecht continues to suffer severe pain in his shoulder, neck and back.  If an impairment rating were given, Mr. Hecht would likely have a whole person impairment rating of 15% under the AMA Guides, 5th Edition.  Valuing his permanent impairment at $10,000.00 per percentage, Mr. Hecht has total permanent impairment damages of $150,000.  If this matter proceeds to litigation, Mr. Hecht will retain a medical doctor to perform an impairment rating.

### D.    Scarring

After undergoing two surgeries and needing a third, Mr. Hecht has significant scarring from the incisions.  The value of the scarring is estimated to be $10,000.

The defendants dispute the cause, nature and extent of defendant's claimed injuries and damages as set forth in the Proposed Scheduling Order.  Moreover, while the defendants are not claiming damages, the defendants reserve any rights they may have to seek recovery of costs and attorney's fees.

### 6.    REPORT OF PRECONFERENCE SCHEDULING AND MEETING UNDER FED R. CIV. P. 26(f)

a.    Date of Rule 26(f) meeting:

The meeting between plaintiff's counsel and defense counsel took place on September 26, 2012.

b.      Names of each participant and party he/she represented:

Nicholas W. Mayle, counsel for Plaintiff;

Rebecca K. Wagner, counsel for Defendants.

c.      Statement as to when Rule 26(a)(1) disclosures were made or will be made:

Rule 26(a)(1) disclosures will be made on or before October 22, 2012.

d.      Proposed changes, if any, in timing or requirement of disclosures under Fed. R.

Civ. P. 26(a)(1):

None.

e.      Statement concerning any agreements to conduct informal discovery:

The parties discussed informal discovery, such as joint interviews with potential

witnesses, joint meetings with clients to discuss settlement, and exchanging

documents outside of formal discovery.  At this time, the parties do not believe

informal discovery will be beneficial and/or result in the resolution of Plaintiff's

claims.

f.      Statement concerning any other agreements or procedures to reduce discovery and

other litigation costs, including the use of a unified numbering system:

The full extent of documents produced during discovery is unknown at present.

The parties will utilize a unified exhibit numbering system if requested by the

Court.

g.      Statement as to whether the parties anticipate that their claims or defenses will

involve extensive electronically stored information, or that a substantial amount of disclosure or

discovery will involve information or records maintained in electronic form:

> The full extent of documents produced during discovery is unknown at present. However, at this time, the parties do not expect that the claims and/or defenses will involve extensive electronically stored information or that a substantial amount of disclosures or discovery will involve information or records maintained in electronic form.

h.    Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:

> The parties have discussed the possibility for promptly settling or resolving the case, and will consider mediation after initial depositions of the parties and before expert disclosures are due.

## 7.   CONSENT

Plaintiff filed an unopposed motion to refer this case to U.S. Magistrate Judge Rice which was granted.

## 8.    DISCOVERY LIMITATIONS

a.    Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules:

> The parties agree to thirty (30) interrogatories per party. The parties further agree to parties plus four (4) depositions per side, excluding experts.

b.    Limitations which any party proposes on the length of depositions:

> The parties agree to limit depositions to seven (7) hours each.

c.    Limitations which any party proposes on the number of requests for production

and/or requests for admission:

The parties agree to thirty (30) requests for production and twenty (20) requests

for admission per party.  The parties agree to unlimited requests for admissions of

authenticity.

d.    Other Planning or Discovery Orders:

None.

## 9.    CASE PLAN & SCHEDULE

a.    Deadline for Joinder of Parties and Amendment of Pleadings: December 7, 2012.

b.    Discovery Cut-Off:  May 3, 2013.

c.    Dispositive Motion Deadline:  May 31, 2013.

d.    Expert Witness Disclosure:

1.    The parties shall identify anticipated fields of expert testimony, if any.

Plaintiff anticipates disclosures in the following expert fields:

(i)     Medical Experts;

(ii)    Impairment Rating expert;

(iii)   Functional Capacity expert;

(iv)   Vocational Expert;

(v)    Economic Expert;

(vi)   Insurance Practices and Bad Faith Experts; and

(vii)  Any expert necessary to rebut Defendant's expert

witnesses.

18

Defendants anticipate disclosures in the following expert fields:

2.      Limitations which the parties propose on the use or number of expert witnesses:

The parties may utilize up to six (6) retained expert witnesses per side.

3.      The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before March 8, 2013.

4.      The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before: April 5, 2013.

e.      Identification of Persons to be Deposed:

It is anticipated that there will be depositions of Mr. Hecht, Allstate's designated corporate representative, Allstate's adjuster, treating physicians, and retained experts.

f.      Deadline for Interrogatories:

The parties shall serve interrogatories to the other no later than 33 days prior to the discovery cut off.

g.      Deadline for Requests for Production or Documents and/or Admissions:

The parties shall serve requests for production of documents and/or admissions to the other no later than 33 days prior to the discovery cut off.

### 10.  DATES FOR FURTHER CONFERENCES



a.      An early neutral evaluation ~~A settlement conference~~ will be held on __2/28/13__ at __1 p.m.__

o'clock ___.m. It is hereby ordered that all ~~settlement conferences~~ early neutral evaluations that take place before the

19

magistrate judge shall be confidential.

( ) *Pro se* parties and attorneys only need be present.

(X) *Pro se* parties, attorneys, and client representatives with authority to settle must be

present. (NOTE: This requirement is not fulfilled by the presence of counsel. If an insurance

company is involved, an adjustor authorized to enter into settlement must also be present.)

( ) Each party shall submit ~~a Confidential Settlement~~ *an early neutral evaluation* Statement to the magistrate judge ~~on~~ *Consistent with the standard early neutral evaluation order* ~~or before _____ outlining the facts and issues, as well as the strengths and~~ *attached hereto.*

~~weaknesses of their case.~~

b.      Status conferences will be held in this case at the following dates and times:

_____

c.      A final pretrial conference will be held in this case on  *August 21, 2013*

at _10_ o'clock _a_.m.  A Final Pretrial Order shall be prepared by the parties and submitted to

the court no later than five (5) days before the final pretrial conference.

## 11.   OTHER SCHEDULING MATTERS

a.      Identify those discovery or scheduling issues, if any, on which counsel after a

good faith effort, were unable to reach an agreement.

None.

b.      Anticipated length of trial and whether trial is to the court or jury.

Plaintiff anticipates a seven (7) day trial to a jury.

c.      Identify pretrial proceedings, if any, that the parties believe may be more

efficiently or economically conducted in the District Court's facility at Wayne Aspinall U.S.

Courthouse/Federal Building, 400 Rood Avenue, Grand Junction, Colorado.

The scheduling conference, settlement conference, pretrial conferences, and other conferences regarding discovery should be conducted at the District Court's facility in Grand Junction.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

21

DATED this 24ᵗʰ day of October, 2012.

BY THE COURT:

_____

Hon. Gordon Gallagher
United States Magistrate Judge

APPROVED:

/s/ Nicholas W. Mayle
Nicholas W. Mayle, Esq.
KILLIAN DAVIS Richter & Mayle, PC
202 North Seventh Street
P.O. Box 4859
Grand Junction, Colorado 81502
Phone: (970) 241-0707
Fax: (970)242-8375
Email: nick@killianlaw.com

/s/ Rebecca K. Wagner
Rebecca K. Wagner, Esq.
Robyn B. Averbach, Esq.
Campbell Latiolais & Averbach, P.C.
825 Logan Street
Denver, Colorado 80203
Phone: (303) 861-7760
Fax: (303) 861-7767
E-mail: rkw@cla-law.net